Robert F. SHEPARD, Appellant
(Defendant below),

v.

TOP HAT LAND & CATTLE CO., a corporation, Appellee (Plaintiff below).

No. 4597.

Supreme Court of Wyoming.

Feb. 18, 1977.

Fred W. Phifer, Wheatland, for appellant.

Alfred M. Pence, Pence, Millett & MacMillan, Laramie, for appellee.

Before GUTHRIE, C. J., and McCLINTOCK, RAPER, THOMAS and ROSE, JJ.

THOMAS, Justice.

On August 8, 1973, the appellant, Robert F. Shepard, entered into a written contract to purchase cattle from Top Hat Land & Cattle Co., the appellee. When the cattle were delivered at Top Hat's ranch on September 24 and 25, 1973, Shepard refused to take some 56 head. These cattle then were sold at auction, and this action was brought to recover the difference between the contract price and the amount for which the cattle sold at auction. The district court awarded a judgment to Top Hat Land & Cattle Co. in the amount of $7,151.32 (which represented the difference between the contract price and the selling price of the cattle rejected) together with interest. Shepard has appealed from this judgment.

The material portions of the contract which are involved in this dispute read as follows:

"Buyer agrees to buy and Seller agrees to sell and deliver the livestock described below upon the terms and conditions as follows:

| NO. HEAD | KIND | AGE | BREED | QUALITY | BRAND | BRAND LOCATION | PRICE PER CWT | DELIVERY SCHEDULE BETWEEN DATES SPECIFIED | ESTIMATED DEL. WT. |
|---|---|---|---|---|---|---|---|---|---|
| 700 | Yr/Steers | 1yr. | mixed | Choice | ⊥ | R/S | $60 | Sept 24, 25 | 725 |
| Buy takes all cattle, Seller take $1⁰⁰ off of 3% of the total count | | | | | | | | | |

" * * * * * *

"V. INSPECTION AND WARRANTIES:

* * * * * *

"C. Seller warrants that all livestock shall, at delivery, grade up to quality specified herein, be in sound and merchantable condition and free from disease, infestation and deformities of every kind, and shall not include any bulls, stags, Mexican or dairy-type breeds unless otherwise specified;"

The primary issue in this appeal is the meaning to be attached to the contractual language set forth above. Shepard contends that because the quality of the cattle was stated as "choice," and the contract warranted that quality, he was justified in not accepting the 56 head of cattle. He argues that the district court erred in holding that he should have accepted them and in awarding damages to Top Hat for breach of the contract. Top Hat Land & Cattle Co. contends that the requirement of the contract that the buyer will take all cattle governs, and that for this reason Shepard was not entitled to reject any of the cattle. Furthermore, Top Hat argues that Shepard is not entitled to rely upon the warranty because he inspected the cattle, accepted them all, and after that wrote in his own hand the language in the contract, "Buy [sic] takes all cattle, * * *." Top Hat's position is that under the circumstances Shepard's refusal to take the 56 head of cattle constituted a breach of the contract, and the court properly entered judgment in its favor.

The record demonstrates that there is no dispute over the fact that the 56 head of cattle were not choice cattle. They were rejected by an independent expert cattle buyer who testified at the trial that they were not of choice quality. His testimony is not contradicted.

The record in this case further discloses that the district court heard, and we presume relied upon, a substantial quantum of evidence, extrinsic in its nature, which was intended to explain the contract. This Court previously has said that § 34-2-202, W.S., " * * * was intended to liberalize the parol evidence rule and to eliminate the presumption that a written contract is a total integration." *Zwierzycki v.*

*Owens*, Wyo., 499 P.2d 996, 997 (1972); and *Shrum v. Zeltwanger*, Wyo., 559 P.2d 1384 (1977). These cases appropriately state the effect of subsection (b) of § 34–2–202, W.S. in relation to factual situations described in the statutory language. In this case, however, the parties point only to the language of the contract to sustain their respective positions. Neither of them suggests that the additional evidence constituted "evidence of consistent additional terms" or evidence of "course of dealing or usage of trade" or "course of performance" within the meaning of subsections (a) or (b) of § 34–2–202, W.S. In this instance extrinsic evidence introduced to explain the intention of the parties to this contract should only have been received under the usual rules relating to ambiguity. If the language of the contract is plain and unequivocal that language is controlling and the interpretation of the contractual provisions is for the court to make as a matter of law. The meaning of the instrument is to be deduced only from its language if the terms are plain and unambiguous. *Mauch v. Ballou*, Wyo., 499 P.2d 591 (1972); *Craig v. Gudim*, Wyo., 488 P.2d 316 (1971); *Chandler-Simpson, Inc. v. Gorrell*, Wyo., 464 P.2d 849 (1970); *Flora Construction Company v. Bridger Valley Electric Association, Inc.*, Wyo., 355 P.2d 884 (1960); *Barlow v. Makeeff*, 74 Wyo. 171, 284 P.2d 1093 (1955).

The ambiguity asserted by Top Hat in this case is claimed to arise out of a conflict between certain provisions of the contract. Specifically, it is urged that a commitment of Shepard to take "all cattle," is inconsistent with Shepard's reliance upon a warranty of choice quality which he used to justify his refusal to take some of the cattle. A construction of a contract leading to a conclusion that it encompasses inconsistent provisions is to be avoided if that is reasonably possible because parties to a contract do not intend to introduce contradictory clauses into their agreement. *Covey v. Covey's Little America, Inc.*, Wyo., 378 P.2d 506 (1963); and *Wyoming Irrigation Co. v. Yarnell*, 31 Wyo. 120, 223 P. 332 (1924).

In an instance such as this the court is charged with attempting to ascertain the meaning and intent of the parties by construing the contract on the basis of the language used to express the intention of the parties. *Shellhart v. Axford*, Wyo., 485 P.2d 1031 (1971); *Clayton Oil Company v. Shidler*, Wyo., 473 P.2d 593 (1970); *Flora Construction Company v. Bridger Valley Electric Association, Inc.*, supra; *Pilcher v. Hamm*, Wyo., 351 P.2d 1041 (1960); *Fuchs v. Goe*, 62 Wyo. 134, 163 P.2d 783, 166 A.L.R. 1329 (1945). The court must construe the contract as a whole, and meaning should be afforded to all of the language used by the parties if that can be done and a reasonable construction achieved. All the parts of and every word in the contract should, if possible, be given effect, avoiding a construction which renders a provision meaningless because the presumption is that a particular provision is placed there for a purpose. *Rossi v. Percifield*, Wyo., 527 P.2d 819 (1974). Provisions which apparently conflict must be reconciled, if a reconciliation can be effected by any reasonable interpretation, before the court adopts a construction that would nullify any provision of the contract. *Covey v. Covey's Little America*, supra.

In accordance with these principles this contract must be construed as disclosing the intent of the parties that Top Hat agreed to sell choice quality cattle and that they should "at delivery, grade up to quality specified," and that without regard to the 700 head specified in the contract Shepard agreed to take all cattle which were of the choice quality when tendered for delivery. This construction is consistent with, and does give effect to the language of the instrument. Since the intent of the parties is thus disclosed by the language which they used, resort to evidence outside of the contract for the purpose of contradicting or explaining its terms was not necessary. The judgment of the trial court was premised upon a contrary interpretation of this contract, which construction conceivably could be justified by the extrinsic evidence, but the court should not have relied on that extrinsic evidence in this situation.

Top Hat points to the language of § 34–2–316, W.S., relating to the effect of an examination of goods upon implied warranties of merchantability and fitness as excluding implied warranties in this instance. It contends that there is no express warranty in accordance with § 34–2–313, W.S., because no affirmation of fact related to quality was made here. The contract does incorporate, however, a promise with respect to quality of these cattle which was a part of the basis of this bargain with Shepard and which is an express warranty under the statute. Such an express warranty is not circumscribed nor eliminated by an examination of the goods, and furthermore the record does not disclose that an examination such as that made here necessarily would disclose all of the defects upon which appellant relied in rejecting some of the cattle. See *S-Creek, Inc. v. Monier & Co.*, Wyo., 509 P.2d 777 (1973).

Shepard also complains that he was not given credit for the $1 per hundred on three per cent of the cattle as the contract provides. Shepard did, in fact, present a counter-claim for $166.19. This claim apparently was deducted from the judgment entered against him, but since the judgment must be set aside and since Top Hat apparently concedes the validity of the claim by arguing that it was deducted from the judgment which the court entered in its favor, Shepard should be granted a judgment for the amount claimed in his counter-claim.

The case is reversed and remanded for entry of judgment in accordance with this opinion.