Ray H. SCHACHT and Kareen M. Schacht, Appellants (Defendants),

v.

FIRST WYOMING BANK, N. A.-RAWLINS and I. P. M. Corporation, Appellees (Plaintiffs).

No. 5340.

Supreme Court of Wyoming.

Dec. 4, 1980.

Marvin L. Bishop, III, Bishop, Bishop & Yaap, Casper, for appellants.

T. Michael Golden, MacPherson, Golden, Brown & Dirck, Rawlins, for appellees.

Before RAPER, C. J., and McCLINTOCK, THOMAS, ROSE and ROONEY, JJ.

RAPER, Chief Justice.

Appellants present four issues while seeking to overturn a decree granting specific performance of an option to purchase land and improvements. First, they argue that the trial court erred in its determination that a supplemental lease agreement which extended the life of a lease also kept alive the tenant's option to purchase as created in the original lease. In effect, they contend that whenever a lease is extended by a subsequent agreement, an option provided for in the lease must also be specifically extended or else it lapses at the end of the time period set out in the original agreement. Their second argument is that the supplemental agreement was not intended to extend the life of the option. The third claim of error is that since the lessee had assigned the lease, notice that the option was to be exercised had to come from the assignee rather than the assignor. Finally, appellants assert that the trial court improperly ruled that the testimony of appellant, Kareen Schacht, constituted a waiver of her attorney–client privilege and any consideration of the interrogatories that had been answered by her attorney was, therefore, improper.

We will affirm.

On August 23, 1971, appellants as lessors and appellee I. P. M. Corporation (I. P. M.) as lessee executed a written lease agreement. The lease was for a term of one year, but lessee had the right of renewal from year to year over a period of four consecutive years, with a rental of $2,400.00 per year, payable $200.00 monthly. The lease contained an option clause:

" * * * that the Lessors grant Lessee the option to purchase the land on which said building and all other improvements thereon are situated * * * for the sum of $100,000.00; which sum shall be reduced by crediting 75% of all rentals paid by Lessee to Lessors up to the date of purchasing the realty and improvements thereon; said option to be exercised during the unexpired term of the lease or renewals thereof."

The lease was silent as to the parties' rights in connection with assignment.

The lease was renewed in 1972, 1973, and 1974. Then on January 20, 1975, the parties entered into another written agreement entitled "Lease Agreement Supplement." This document provided:

"This Supplement to lease agreement dated 23rd of August, 1971, between Ray H. Schacht and Kareen M. Schacht, husband and wife, hereinafter called 'LESSOR,' and IPM Corporation, a Wyoming Corporation, hereinafter called 'LESSEE,' stipulates the following changes:

"1) The above mentioned lease is hereby extended for a period of three years commencing August 23, 1976, and terminating on August 22, 1979.

"2) The lease rental beginning August 23, 1976, is $4,800.00 per year, payable $400.00 monthly on or before the 1st day of each month."

On August 19, 1976, I. P. M. assigned the lease dated August 23, 1971 and the lease supplement dated January 20, 1975 to the appellee–First Wyoming Bank, N. A.–Rawlins (Bank). The intent was to give the Bank additional security on several loans. Eventually I. P. M. went into default on these loans, and the Bank, working with the officers and shareholders of I. P. M. began the task of winding down the business affairs of I. P. M. by liquidating its assets.

Beginning August 23, 1976, appellants began receiving the increased rental payments under the lease supplement. Then in October 1977, after I.P.M had become hopelessly in default, the Bank instructed I.P. M.'s attorney to notify appellants that it was exercising the purchase option. This was done by letter dated October 20, 1977. Appellants refused to accept tender of the purchase price and convey the property. Thereafter, appellees continued to make monthly payments to the appellants claiming they were to be applied toward the purchase price while appellants accepted them only as rental.

■ The first and most important question we must answer is whether the supplemental agreement extended the life of the option as well as the lease. When the terms of a contractual agreement are plain and unambiguous, "then it falls within the province of the court to construe the contract as a matter of law." *Madison v. Marlatt,* Wyo. 1980, 619 P.2d 708, 714. We find the Lease Agreement Supplement unambiguous on its face. It stated that the "lease is hereby extended."

Appellants' argument to the contrary seems premised upon the notion that for public policy reasons we should view the option separate from the lease and require the parties to specifically state that the option is also extended. However, we are unconvinced. The majority rule is that an option contained in a lease is inseparable from and an integral part of the whole contract, and thus an extension of the lease prolongs the life of the option. *Humble Oil & Refining Company v. Lennon,* 1962, 94 R.I. 509, 182 A.2d 306. See also, 15 A.L.R.3d 470, 476 and 484. While this court has never decided the question directly, in *Larsen v. Sjogren,* 1951, 67 Wyo. 447, 226 P.2d 177, 184, *Orange Motors, Inc. v. Meyer,* 1930, 107 N.J.Eq. 461, 149 A. 811, was favorably cited where it was said as a general proposition that an option in a lease is as much a part of the rent contract as any other part of that contract. We hold that the option was an integral and inseparable part of the lease and that the extension of the lease extended the option in the absence of any other agreement to the contrary.

■ Appellants' second challenge is that this result is contrary to the intention of the parties. But again we say that when the terms of a contract are clear, as a matter of public policy, we assume that the terms reflect the intent of the parties. *Madison v. Marlatt,* supra. Here the contract is clear; the lease agreement was to be extended three more years.

The third issue raises the question whether appellants received proper notice of the exercise of the option when it was provided by the assignor instead of assignee. The final notice, dated October 20, 1977, was in the form of a letter signed by counsel for I.P.M. addressed to counsel for the appellants:

"As attorneys for IPM Corporation, you are hereby advised that pursuant to the terms of the August 23, 1971 lease and supplement dated January 20, 1975, between Ray H. Schacht and Kareen M. Schacht and IPM Corporation, the lessee hereby exercises its option contained within said lease to purchase the subject property.

"The lease provides that the purchase price shall be $100,000 less a credit of 75% of all rentals paid to the time of purchase. Including the October 1977 payment, which will have been paid by the time this letter is received, the company's records reveal that it will have paid a total rental of $18,000. Seventy-five percent of $18,000 equals $13,500 and the purchase price would, therefore, be $86,500.

"Enclosed you will find a form of Warranty Deed conveying the reference property to the First Wyoming Bank, N.A.–Rawlins, to whom you are requested to direct your clients to convey this property.

"You are requested to have your clients immediately execute the enclosed deed, take the same, together with a current commitment for title insurance on the property showing merchantable title in the sellers, to their bank. They are to have that bank issue a sight draft for $86,500 and forward the draft, deed and commitment to the Rawlins bank whose address is shown in the deed. The bank, upon receipt of the documents, will honor the sight draft.

"On the outside chance that you no longer represent the Schachts, I am taking the liberty of forwarding a copy of this letter and a copy of the Warranty Deed to them."

There was no provision in the lease–option agreement providing the manner of notice nor, as previously indicated, any prohibition against assignment of the lease–op-

tion. The general rule now prevailing that any property right, not necessarily personal, is assignable, is overcome only by agreement of the contracting parties or a principle of law or public policy. *Angus Hunt Ranch, Inc. v. Bowen*, Wyo. 1977, 571 P.2d 974; *Rosenthal Paper Co. v. National Folding Box & Paper Co.*, 1919, 226 N.Y. 313, 325, 123 N.E. 766, 771. None of those exceptions are here present. There is apparently no applicable statutory provision.

■ Notice in the manner and form provided in a contract is required. 17 Am. Jur.2d § 357, p. 796. But here no particular requirements are present.

The agreed facts disclose that prior to the August 16, 1976 notice, and prior to acceptance of the assignment by the Bank on August 19, 1976, I.P.M. on June 24, 1976 had already notified appellants that I.P.M. was exercising its option. Then again on July 27, 1976, appellants were notified through I.P.M.'s counsel that I.P.M. was exercising its option to purchase and desired to close the sale prior to the lease anniversary date of August 23, 1976 when the increased rentals provided by the extension would go into effect.

■ The situation bears some similarity to *Braten v. Baker*, 1958, 78 Wyo. 273, 323 P.2d 929, reh. denied, 78 Wyo. 300, 325 P.2d 880. In that case there was a prohibition against assignment in the lease, but the lessees nevertheless entered into an agreement with a third person assigning him the right to exercise the option agreement without the consent of lessor, with possession to be taken by assignee after expiration of the leasehold. Lessees gave notice that they were exercising their option to purchase. Lessors claimed forfeiture because of the assignment. This court held the assignment irrelevant but expressed various principles applicable to the facts with which we are concerned. All that is required is that the lessee notify the lessor, prior to the date of the expiration of the option, of the lessee's decision to exercise the option. An acceptance during the interval completes the contract and exhausts the option. An optionee can do whatever he wants to with the land and the only right of the optionor is to receive the consideration agreed upon. There was therefore a completed contract in the case now before us before the assignment of the lease and option to the Bank. The execution of a deed directly to the Bank amounted only to a convenience and avoided the execution of a deed to I.P.M. and another from I.P.M. to the Bank. I.P.M. was only acting as an agent for the Bank. The appellants have little cause to complain that all interested parties joined in demanding performance as they have joined in this suit where all rights may be adjudicated.

■ Finally, appellants question the trial court's ruling that appellant waived her attorney–client privilege. We need not decide the question since we have determined that the contractual provision was clear on its face and it was not necessary to resort to extrinsic evidence. On appeal we presume that the district court disregarded improperly admitted evidence. *X v. Y*, Wyo. 1971, 482 P.2d 688, 691.

Affirmed.