PER CURIAM.
Cimarron Mortgage Company (“Cimar-ron”) appeals from a judgment in favor of its mortgagors, Donald Wayne Wright and Mattie Wright, in the Wrights’ declaratory-judgment action against Cimarron. We reverse and remand.
The facts dispositive of this appeal are undisputed. On August 19, 1999, the Wrights filed a one-count complaint alleging claims against Cimarron and Alfa Mutual Insurance Company (“Alfa”). The complaint contained the following factual allegations:
“4. The Plaintiff Donald Wright, on or about the 10th day of December 1993, signed a Note whereby he acknowledged an indebtedness (and promised to pay the same) to Johnson & Associates Mortgage Co., Inc. This note was secured by a mortgage signed the same date by the [Wrights], to Johnson & Associates Mortgage Co., Inc. (‘Johnson’), which mortgage described realty:
“[Description of realty omitted].
“5. [Johnson] assigned its interest in said note and mortgage in commerce. Cimarron contends that it presently owns said note and mortgage and contends that Donald Wayne Wright and/or Mattie Wright is/are indebted to it.
“6. Donald Wayne Wright purchased a [homeowner’s] policy of insurance from Alfa (policy number H0427409) that insures the mortgage[d] property [for] damage or loss because of fire or other perils. Cimarron is a loss payee under said policy.
“7. The mortgaged property was, on the 25th day of February 1999, damaged or destroyed by fire. The [Wrights] made claim against Alfa under the policy. Alfa has tendered the limits of said policy, subject to the claims of Cimar-ron, to the [Wrights]. A dispute exists between the [Wrights] and Cimarron regarding the extent, if any, of their indebtedness to Cimarron.”
The Wrights sought an “Order declaring that Cimarron must answer [the] complaint and plead each claim that it has against the Plaintiffs, or either of them, or have its claims under the Alfa policy denied and without merit.” (Emphasis added.)
On September 29, 1999, Cimarron moved to dismiss the complaint, pursuant to Ala. R. Civ. P. 12(b)(6), for failure to state a claim. The trial court denied that motion.
On October 6, 1999, Alfa filed an “Answer and Interpleader.” In a “counterclaim and cross-claim for interpleader,” Alfa acknowledged that the Wrights and Cimarron had “conflicting claims” to $42,000, the applicable limit of the Wrights’ homeowner’s policy. It stated that it was tendering a check in that amount, payable to the circuit clerk, and sought a judgment discharging it from further liability.
On February 18, 2000, Cimarron filed a motion for a summary judgment. It supported the motion with the affidavit of Linda Scott, its senior vice president. Attached to Scott’s affidavit were copies of (1) the deed by which Donald Wright purchased the property, (2) the note evidencing Wright’s indebtedness for the purchase price, (3) the mortgage of Donald Wright and Mattie Wright to Johnson & Associates Mortgage Co., Inc. (“Johnson”), (4) the assignment of the mortgage from Johnson to Cimarron, (5) the declarations page from the Wrights’ homeowner’s policy, and (6) a statement prepared by Ci-marron, calculating the pay-off amount of the note as of February 1, 2000.
The Wrights filed no evidentiary material in response to Cimarron’s summary-judgment motion. Instead, on April 24, *20 2000, they filed a motion reiterating their request for an order compelling Cimarron to file counterclaims against them. On May 8, 2000, the Wrights filed a “Motion for Order Requiring Cimarron to File a Counter-claim or Have an Order Entered that Its Claims to the Funds Inter[pleaded] Are Abandoned.” More specifically, the Wrights sought an order “holding that Cimarron must file a counter-claim ... stating the claims that it has against the Plaintiffs and/or to the money [pleaded] into [the] court and for a further Order allowing the Plaintiffs a reasonable period of time to plead their defenses.” On December 31, 2000, the trial court ordered Cimarron “to file a counterclaim for the funds inter[pleaded]” or its claims to the interpleaded funds would be considered abandoned.
On July 6, 2000, the trial court entered an order dismissing the claims against Alfa and discharging Alfa from all further liability. It also directed that the $42,000 stake “remain in an interest bearing account with [the] court,” pending resolution of the litigation.
On May 21, 2001, the Wrights filed a motion, asserting that Cimarron had not filed any claims against them, seeking a declaration of the status of the case, and requesting “an Order declaring that Ci-marron ha[d] abandoned any claims that it ha[d] against [them].” They also sought an order “directing that the clerk of [the] court pay the [$42,000 stake] to the Plaintiffs.” On that same date, the trial court ordered: “[A]ny claims Cimarron Mortgage may have against Donald Wayne Wright [must] be filed within 30 days as compulsory counterclaims[, and] if not filed, then they are deemed abandoned.” On July 22, 2001, the trial court entered an order directing the clerk to pay the $42,000 to the Wrights and dismissing the action. Specifically, the court stated:
“The Defendant Cimarron Mortgage Co. having failed after repeatedly being given opportunities to file and then having been ordered to file a counterclaim and in failing to do so ... its right to do so would be waived, it is Ordered that said defendant has waived its right to claim any portion of the inter[pleaded] funds. The clerk is directed to pay the inter[pleaded] funds to the Plaintiff. This Order appears to dispose of all remaining issues and all other aspects of this case are dismissed.”
Thus, the trial court based its order solely on Cimarron’s failure to file a counterclaim. From that order, Cimarron appealed. On appeal, Cimarron contends that the trial court erred in dismissing the action, and in awarding the stake to the Wrights.
According to Cimarron, Alabama law does not require one interpleader claimant to counterclaim against another claimant in order to preserve its right to the stake. More specifically, it states: “The Wrights’ position that Cimarron had to file a counterclaim to contest entitlement of the inter[pleaded] insurance funds is without any basis in logic or legal precedent.” (Brief of Appellant, at 17.) According to the Wrights, they “could not go forward with their assertion of the claims for set-off they had against Cimarron until Cimarron answered the Complaint and [pleaded] each claim it had against the Wrights regarding the inter[pleaded] funds.” (Brief of Appellee, at 10.) (Emphasis added.) We agree with Cimarron.
Applying the rule advocated by the Wrights would essentially require one party to compose a claim for its opponent. Not surprisingly, they cite no authority for such a proposition. An interpleader claimant has no burden to plead facts sufficient for the other claimant to state a claim against it or the stake. Cimarron fully *21 and effectively joined issue with the Wrights by filing its summary-judgment motion. Consequently, the trial court erred in dismissing the action.
For these reasons, the judgment of the trial court is reversed, and the cause is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
HOUSTON, SEE, LYONS, BROWN, HARWOOD, WOODALL, and STUART, JJ., concur.
JOHNSTONE, J., concurs specially.
MOORE, C.J., concurs in the result.