297 P.3d 176

**Steven T. WALTNER; Sarah V. Waltner, Plaintiffs/Appellants,**

v.

**JPMORGAN CHASE BANK, N.A.; California Reconveyance Company, Defendants/Appellees.**

**No. 1 CA–CV 11–0497.**

Court of Appeals of Arizona, Division 1, Department C.

Jan. 29, 2013.

Aiken Schenk Hawkins & Ricciardi, P.C. By André H. Merret, Phoenix, Attorneys for Plaintiffs/Appellants.

Maynard Cronin Erickson Curran & Reiter, P.L.C. By Douglas C. Erickson, Phoenix, Attorneys for Defendants/Appellees.

## OPINION

HOWE, Judge.

¶ 1 Steven and Sarah Waltner brought numerous claims against JPMorgan Chase Bank, N.A., ("Chase") and California Reconveyance Company ("CRC"), arising out of Chase's attempts to foreclose on two properties the Waltners owned. The Waltners appeal from the trial court's decisions (1) denying their application for entry of default judgment, (2) granting Chase and CRC's motion for summary judgment, and (3) denying the Waltners' motion for reconsideration of its summary judgment order.

¶ 2 We affirm the trial court's rulings. We hold that the trial court properly denied the application for entry of a default judgment because moving for summary judgment constitutes "otherwise defend[ing]" under Arizona Rule of Civil Procedure ("Rule") 55(a), which precludes an entry of default from becoming effective. We also hold in accordance with *Hogan v. Wash. Mut. Bank, N.A.*, 230 Ariz. 584, 585, ¶ 1, 277 P.3d 781, 782 (2012), that the trial court properly granted summary judgment because Chase and CRC were not required to prove their authority or "show the note" before commencing the nonjudicial foreclosure of the Waltners' property. We further hold that the trial court did not abuse its discretion in denying the Waltners' motion for reconsideration because they did not show that they exercised due diligence in discovering new evidence or that the evidence would have likely changed the trial court's ruling on the motion for summary judgment.

## FACTS AND PROCEDURAL HISTORY

¶ 3 In 2005, the Waltners purchased two properties: one house in Goodyear, and a second house in Avondale that became their primary residence. Separate loans from Washington Mutual Bank ("WaMu") financed each purchase, and a deed of trust on each property secured each loan. Each deed of trust listed CRC as Trustee. In September 2008, Chase acquired WaMu's assets through a Federal Deposit Insurance Corporation ("FDIC") receivership. The next month, Chase notified the Waltners that it had acquired the right to service their loans.

¶ 4 In December 2009, CRC sold the Goodyear house at a trustee's sale and notified the Waltners that it would sell the Avondale house in March 2010. On March 9, 2010, the Waltners filed a thirty-six count complaint against Chase, CRC, and WaMu, seeking to void the sale of the Goodyear house, enjoin

the scheduled trustee's sale of the Avondale house, and prevent the Avondale house's foreclosure.

¶ 5 Chase and CRC moved to dismiss the complaint under Rule 12(b)(6), arguing that the basis for the Waltners' claims—that Chase and CRC had not shown that they held the original notes and deeds of trusts on the properties—was not legally supportable. On August 6, 2010, the trial court dismissed all but five claims against Chase and CRC.[1] The court ruled that those claims addressed whether Chase and CRC showed that they were entitled to foreclose under the deeds of trust, and that while the Waltners' " 'show me the note' theory [was] not well founded," whether Chase had the right to foreclose could not be resolved "within the confines" of a motion to dismiss. The court suggested that these issues might be resolved on a motion for summary judgment. On August 26, 2010, the Waltners applied for entry of default against Chase and CRC under Rule 55(a) because Chase and CRC had not filed an answer to the complaint within twenty days of the ruling on the motion to dismiss.

¶ 6 On September 3, 2010, Chase and CRC moved for summary judgment, asserting that the complaint's remaining claims rested on the incorrect "show me the note" premise. They explained that Chase had acquired the notes, which were secured by the deeds of trust, when it acquired WaMu's assets and liabilities from the FDIC, and therefore was the beneficiary with the authority to institute the trustee's sale. As evidence, Chase and CRC provided a Chase Litigation Support Analyst's declaration that they had acquired the notes.

¶ 7 On September 22, the Waltners moved for entry of default judgment under Rule 55(b). Chase and CRC opposed the motion, arguing that default could be entered under Rule 55(a) only if a defendant "failed to plead or otherwise defend" within ten days of the application, and that they had "otherwise defended" against the Waltners' complaint within that time by moving for summary judgment.

¶ 8 The Waltners moved to strike (1) the summary judgment motion because it was untimely and (2) Chase's declaration because it was not based on the employee's personal knowledge, as Rule 56(e) requires. The court denied the Waltners' motion to strike and ordered oral argument and supplemental briefing on whether (1) filing a motion for summary judgment precluded entry of default and (2) summary judgment should be granted.

¶ 9 After briefing, the court denied the application for default judgment, finding that even if it entered a default judgment, that judgment "would likely be lifted." The court also granted Chase and CRC summary judgment. The court found that, despite the Waltners' attempts to characterize their claims otherwise, they were asserting a "show me the note" theory, arguing that a party attempting to foreclose must hold both the deed of trust and the note. The court noted that federal courts had found the separation of ownership did not affect the enforceability of either a note or a deed of trust.

¶ 10 The Waltners moved for reconsideration of the court's rulings under Rules 59(a) and 60(c) and asserted that newly discovered evidence supported their claims. They argued that they had recently discovered that WaMu had sold both of their loans, first to a WaMu subsidiary and then to a trust three years before the receivership that ultimately transferred WaMu assets to Chase. The court denied the motion for reconsideration.

¶ 11 The court entered judgment dismissing the complaint against Chase and CRC, and the Waltners timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12–2101(A)(1) (West 2012).[2]

## DISCUSSION

### 1. Denial of Default Judgment

¶ 12 The Waltners first argue that the trial court erred in refusing to enter a default

---

1. The court took no action on counts against WaMu, but subsequently dismissed them without prejudice for lack of prosecution.

2. We cite the current version of applicable statutes when no revisions material to this decision have occurred.

judgment against Chase and CRC. Rule 55(a) allows entry of default when the defending party to an action "fail[s] to plead or otherwise defend as provided by these Rules." The Waltners argue that Chase and CRC's summary judgment motion did not constitute "plead[ing] or otherwise defend[ing]" to preclude the entry of default from becoming effective under Rule 55(a). Whether a summary judgment motion precludes the entry of default from becoming effective under the Arizona Rules of Civil Procedure is a question of law that we review de novo. *See Hornbeck v. Lusk*, 217 Ariz. 581, 582, ¶ 4, 177 P.3d 323, 324 (App.2008) ("[w]hen the resolution of an issue depends on the interpretation and interplay of court rules and statutes, we review the superior court's ruling de novo.").

¶ 13 We hold that timely moving for summary judgment constitutes "plead[ing] or otherwise defend[ing]" under Rule 55(a). Of course, a motion for summary judgment is not a "pleading" under the Arizona Rules of Civil Procedure. *See* Ariz. R. Civ. P. 7(a) (listing the permissible pleadings as a complaint, an answer, a counterclaim, a cross-claim, a third-party complaint, a third-party answer, and a reply); *Graham v. Goodyear Aerospace Corp.*, 120 Ariz. 275, 277, 585 P.2d 884, 886 (App.1978) (Rule 7(a) "sets forth the pleadings allowed under our civil rules, and neither a motion to dismiss nor a motion for summary judgment is listed therein.") (footnote omitted).

¶ 14 But moving for summary judgment does qualify as "otherwise defend[ing]" against the action. " 'Defend' means to contest and endeavor to defeat a claim or demand made against one in a court of justice." *Davis v. Superior Court (Hannah)*, 25 Ariz. App. 402, 403, 544 P.2d 226, 227 (1976); *see also Rashidi v. Albright*, 818 F.Supp. 1354, 1355–56 (D.Nev.1993) ("Failure to 'otherwise defend' presumes the absence of some affirmative action on the part of a defendant [that] would operate as bar to the satisfaction of the moving party's claim."). A defendant in a cause of action who moves for summary judgment contests a plaintiff's claim and argues that it presents "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Ariz. R. Civ. P. 56(c). A summary judgment in a defendant's favor bars satisfaction of the plaintiff's claim and necessarily defeats it.

¶ 15 Other jurisdictions that have considered this issue agree that moving for summary judgment qualifies as "otherwise defend[ing]" for purposes of Rule 55(a) and precludes the entry of default from becoming effective. *See Rashidi*, 818 F.Supp. at 1356 ("[A] summary judgment motion [that] speaks to the merits of the case and demonstrates a concerted effort and an undeniable desire to contest the action is sufficient to fall within the ambit of 'otherwise defend' for purposes of Fed.R.Civ.P. 55."); *Lexington Fayette Cnty. Food and Bev. Ass'n v. Lexington–Fayette Urban Cnty. Gov't*, 131 S.W.3d 745, 756–57 (Ky.2004) (finding that the defendant "otherwise defended" the action whether its motion "was considered a motion to dismiss or a motion for summary judgment"); *Klock v. Town of Cascade*, 284 Mont. 167, 943 P.2d 1262, 1266 (1997) (holding that a motion for summary judgment constitutes "otherwise defend[ing]" under Rule 55); *Equable Ascent Fin. v. Christian*, 196 Ohio App.3d 34, 962 N.E.2d 322, 324 (2011) (holding that a motion to dismiss or for summary judgment precluded default judgment); *M & A Const. Corp. v. Akzo Nobel Coatings, Inc.*, 936 P.2d 451, 455 (Wyo. 1997) ("Akzo had otherwise defended the case by filing its motion for summary judgment . . . ."); *see also Cimarron Mortg. Co. v. Wright*, 831 So.2d 18, 21 (Ala.2002) (Johnstone, J., concurring specially) ("While Cimarron refused to plead with a counterclaim, it did 'otherwise defend as provided by these rules' by filing the motion for summary judgment . . . .") (emphasis omitted); *Grenier v. Comm'r*, 306 Conn. 523, 51 A.3d 367, 377 n. 10 (2012) (motion for summary judgment may be used to test a pleading's legal sufficiency); *Coral Ridge Props. v. Playa Del Mar Ass'n*, 505 So.2d 414, 417 (Fla.1987) (finding a responsive pleading unnecessary when summary judgment disposes of suit); *Chicago Cent. & Pac. R. Co. v. Calhoun Cnty.*, 816 N.W.2d 367, 373 n. 2 (Iowa 2012) (defending parties may raise defenses in pre-

answer motion for summary judgment).[3] The near-unanimity of the interpretation of "otherwise defends" in these jurisdictions gives added force to our own conclusion.

¶ 16 The Waltners' argument to the contrary—that filing a motion for summary judgment cannot prevent default because the motion does not toll the time for filing an answer required by Rule 12(a)(3)(A)—is not well taken for two reasons. First, Rule 55(a) governs the entry of default, not Rule 12; and as we have now held, filing a motion for summary judgment constitutes otherwise defending, which precludes an entry of default from becoming effective.

¶ 17 Second, even if Rule 12(a)(3)(A) were relevant to this issue, the time for filing an answer is indeed tolled pending the resolution of a motion for summary judgment. Rule 12(b)(6) allows a defending party to file a motion to dismiss because the complaint fails to state a claim upon which relief can be granted, and requires that the motion be filed before filing a responsive pleading. If the motion to dismiss presents matters outside the pleadings and the court considers them in its ruling, the court must treat it as a motion for summary judgment. Ariz. R. Civ. P. 12(b). The filing of such a motion tolls the time for filing the responsive pleading—the answer—until ten days after the court rules on the motion. *Id.* at 12(a)(3)(A).

¶ 18 Because a motion to dismiss treated as a summary judgment motion tolls the time for filing an answer, a motion for summary judgment filed in the first instance logically also tolls the time for filing an answer. Federal courts interpreting Federal Rule of Civil Procedure 12(b)(6) have so held. *INVST Fin. Grp. v. Chem–Nuclear Sys., Inc.,* 815 F.2d 391, 403 (6th Cir.1987) ("Courts and commentators have acknowledged that no

answer need be filed before a defendant's motion for summary judgment may be entertained."); *Hubicki v. ACF Indus., Inc.,* 484 F.2d 519, 522 (3d Cir.1973) (stating that a motion for summary judgment "may be made before pleading to the complaint"); *Rashidi,* 818 F.Supp. at 1356 ("Although Rule 12 does not specifically allow for a summary judgment motion to toll the running of the period within which a responsive pleading must be filed, by analogy the language would seem to apply . . . ."); *see also* 10A Wright, Miller, Kane & Marcus, *Federal Practice & Procedure* § 2718 (3d ed. 2012) ("There seems to be no compelling reason for treating a motion originally made under Rule 56 differently from one that has been transformed into a summary judgment motion. Therefore, a summary judgment motion made prior to an answer should have the benefit of the Rule 12(a) language tolling the period of time in which an answer must be filed."). Federal cases interpreting federal rules of civil procedure that are similar to our rules are instructive and persuasive in construing our rules, and we "subscribe to the principle that uniformity in interpretation of our rules and the federal rules is highly desirable." *Orme Sch. v. Reeves,* 166 Ariz. 301, 304, 802 P.2d 1000, 1003 (1990).

¶ 19 Under these principles, entry of a default judgment against Chase and CRC would have been inappropriate. The Waltners applied for a default judgment on their five remaining claims on August 26, 2010. Less than ten days later—on September 3, 2010—Chase and CRC defended those claims by moving for summary judgment. That satisfied the requirements of Rule 55(a)(3) to prevent the entry of default from becoming effective, and the trial court did not err in denying the Waltners' application for entry of default judgment.[4]

---

3. Contrary to the weight of authority, the Missouri Court of Appeals—in interpreting Missouri's rule of civil procedure addressing default judgments—has declined to "expand the phrase 'or otherwise defend as provided by these rules' to include the filing of answers to discovery or the filing of a summary judgment motion." *J.E. Scheidegger Co. v. Manon,* 149 S.W.3d 499, 503 (Mo.App.2004). The court has nevertheless recognized that the filing of a summary judgment motion is "important" in determining whether to set aside the default judgment. *Id.*

4. Because we hold that filing the motion for summary judgment precluded entry of default, we need not address the trial court's ruling that a default judgment, if entered, would have likely been set aside. *See Powers v. Guar. RV, Inc.,* 229 Ariz. 555, 560, ¶ 13, 278 P.3d 333, 338 (App. 2012) (Stating that an appellate court will affirm the trial court's ruling if the court "reached the right result for the wrong reason.") (internal quotation marks and citation omitted).

## 2. Granting Chase and CRC's Motion for Summary Judgment

¶ 20 The Waltners argue that the trial court erroneously granted Chase and CRC summary judgment, asserting that a genuine issue of material fact remains about whether Chase actually acquired the Waltner notes and became the beneficiary with the authority to enforce the deed of trust. We review de novo the grant of summary judgment and affirm if, viewing the facts in the light most favorable to the party against whom judgment was entered, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Ariz. R. Civ. P. 56(c); *Wang Elec., Inc. v. Smoke Tree Resort, LLC*, 230 Ariz. 314, 318, ¶ 9, 283 P.3d 45, 49 (App.2012).

¶ 21 No genuine issue of material fact exists about whether Chase and CRC had the authority to enforce the deed of trust. The Arizona Supreme Court recently held that "Arizona's nonjudicial foreclosure statutes do not require the beneficiary to prove its authority or 'show the note' before the trustee may commence a non-judicial foreclosure." *Hogan*, 230 Ariz. at 585, ¶ 1, 277 P.3d at 782. In *Hogan*, the plaintiff sued to enjoin trustees' sales unless the beneficiaries proved that they were entitled to collect on the respective notes. *Id.* at ¶ 3. The court recognized that a deed of trust could be enforced only by one having the right to enforce the underlying obligation, but rejected the argument that the enforcing party had the burden of demonstrating its rights before a non-judicial foreclosure sale could occur. *Id.* at 586, ¶ 6, 277 P.3d at 783. The court noted that non-judicial foreclosures were intended to be quick, efficient, and outside of the judicial process, and that

[r]equiring the beneficiary to prove ownership of a note to defaulting trustors before instituting non-judicial foreclosure proceedings might again make the mortgage foreclosure process . . . time-consuming and expensive, and re-inject litigation, with its attendant cost and delay, into the process.

*Id.* at 587, ¶ 12, 277 P.3d at 784 (internal quotation marks and citations omitted).

¶ 22 The Waltners' claims that survived the motion to dismiss depend on their contention that Chase was not the beneficiary under the deeds of trust, which was based on the assertion that Chase had not established that it acquired the underlying notes. Under *Hogan*, Chase was not required to prove it held the underlying notes before proceeding with the non-judicial foreclosures.

¶ 23 Nevertheless, the record contains evidence that Chase acquired all the interest in the Waltner loans that WaMu previously held. The Waltners alleged in their complaint that they had received two loans from WaMu secured by two deeds of trust. As part of their motion to dismiss, Chase and CRC submitted to the court the Purchase and Assumption Agreement between the FDIC, the FDIC as WaMu's Receiver, and Chase. Under that agreement, Chase assumed all of WaMu's mortgage servicing rights and obligations. Chase and CRC also provided an affidavit from WaMu's FDIC Receiver that Chase had acquired all of WaMu's loans and loan commitments under the Purchase and Assumption Agreement as of September 25, 2008. Letters from Chase notified the Waltners that Chase had acquired their WaMu loans—identified by loan number—through the FDIC. Chase also provided a declaration of a Chase Litigation Support Analyst that it had acquired the promissory notes secured by deeds of trust on the Waltners' two properties and therefore had become the beneficiary under both deeds of trust.[5] The Waltners produced nothing to refute this evidence. Based on this record, the trial court did not err in granting Chase and CRC summary judgment.

---

5. The Waltners argue that the trial court could not have relied on the Chase Litigation Support Analyst's affidavit because he had no personal knowledge of Chase's acquisition of the Waltner notes, and that the court therefore erred in granting summary judgment. While the Waltners are correct that an affidavit must be based on the affiant's personal knowledge, Ariz. R. Civ. P. 56(e), we need not consider this argument because even without consideration of the affidavit, the record contains evidence establishing that Chase had acquired all rights to the Waltners' loans that WaMu previously held.

### 3. Denial of the Motion for Reconsideration

¶ 24 The Waltners argue that the trial court abused its discretion in denying their motion for reconsideration pursuant to Rule 59(a) on the grounds of newly discovered evidence.[6] To obtain relief, the moving party must demonstrate that the evidence (1) is material, (2) existed at the time of trial, (3) could not have been discovered before trial by the exercise of due diligence, and (4) would probably change the result at a new trial. *Wendling*, 143 Ariz. at 602, 694 P.2d at 1216. We affirm a trial court's decision on a motion for new trial absent a showing of a clear abuse of discretion. *Id.*

¶ 25 In the motion for reconsideration and the attached declaration of Sarah Waltner, the Waltners contended that they had discovered through internet research, telephone calls and emails to various entities, an Offering Circular related to a trust. From this information, they deduced that their loans were "likely" in a class of loans that were sold to a trust called "WaMu Mortgage Pass–Through Certificates, Series 2005–PR4" in December 2005, years before Chase acquired the loans of WaMu. We find no abuse of discretion in the trial court's decision to deny the motion. Even assuming the proffered information was admissible evidence, it would not likely change the result. The Waltners' contended that the loans were sold to a trust whose name indicated a connection to WaMu. Chase acquired *all* of WaMu's loans under the Purchase and Assumption Agreement. Nothing in the Waltners' motion or declaration demonstrates that the loans were sold and not part of the transaction with Chase.

¶ 26 In addition, the Waltners did not demonstrate that this information could not have been discovered by due diligence before the court's ruling. The declaration regarding the discovery of this information stated that Sarah Waltner had met with resistance when requesting information, but also stated that the events leading to her "discoveries" began

with the Waltners serving subpoenas on Chase and Wells Fargo Bank on February 10, 2011. The Waltners had filed this lawsuit in March 2010, nearly a year earlier, and had filed their reply to Chase and CRC's motion for summary judgment four months earlier. The Waltners offered no explanation for waiting so long before pursuing this line of investigation. The court therefore did not abuse its discretion in denying the motion for new trial.

### CONCLUSION

¶ 27 We find that Chase and CRC's motion for summary judgment satisfied Rule 55(a)'s requirement that a party "plead or otherwise defend," precluding the entry of default. We further find that the trial court did not err in granting Chase and CRC summary judgment or in denying the Waltner's motion for reconsideration. The trial court's ruling is affirmed.

CONCURRING: MARGARET H. DOWNIE, Acting Presiding Judge and PATRICIA A. OROZCO, Judge.

---

**6.** The Waltners moved for reconsideration under both Rule 59(a) and Rule 60(c). Because they filed their motion within the time frame of Rule 59(d), we review it as a motion for new trial under Rule 59(a)(4). *Wendling v. Sw. Sav. & Loan Ass'n*, 143 Ariz. 599, 601 n. 2, 694 P.2d 1213, 1215 n. 2 (App.1984).